[Cite as *Roberts v. Erie Ins. Group*, 2013-Ohio-718.]

IN THE COURT OF APPEALS FOR GREENE COUNTY, OHIO

MICHELLE ROBERTS, et al.           :

    Plaintiffs-Appellants           :           C.A. CASE NO.    2012 CA 46

v.                                 :           T.C. NO.    10CV38

ERIE INSURANCE GROUP, et al.       :           (Civil appeal from
                                    Common Pleas Court)

    Defendant-Appellee           :

                                         :

. . . . . . . . . .

**O P I N I O N**

Rendered on the ___1st___ day of ___March___, 2013.

. . . . . . . . . .

JOHN A. SMALLEY, Atty. Reg. No. 0029540, 131 N. Ludlow Street, Suite 1400, Dayton, Ohio 45402
    Attorney for Plaintiffs-Appellants Michelle and James Roberts

STEVEN O. DEAN, Atty. Reg. No. 0009095, 130 W. Second Street, Suite 1500, Dayton, Ohio 45402
    Attorney for Defendant-Appellee Zachary R. Gillespie

. . . . . . . . . .

FROELICH, J.

    **{¶ 1}**  Michelle and James Roberts appeal from a judgment of the Greene

County Court of Common Pleas, which entered judgment in favor of Defendant Zachary Gillespie on their personal injury claims.[1] Because Mrs. Roberts suffered the alleged physical injuries, and the complaint referred to Mr. Roberts's claim as a "derivative claim," we will hereafter only refer to Mrs. Roberts's ("Roberts"), for simplicity.

{¶ 2} After a trial on Roberts's personal injury claim, in which the parties agreed that Gillespie was negligent and at fault, a jury stated in interrogatories that 1) Gillespie had "directly or proximately caused any injuries" to Roberts as a result of a car accident, but 2) it awarded no damages related to any injuries. Similarly, the verdict form stated that the jury found in favor of the plaintiff, but awarded "$0" in damages. The trial court entered judgment in favor of Gillespie.

{¶ 3} For the following reasons, the judgment of the trial court will be reversed.

{¶ 4} At trial, Mr. and Mrs. Roberts and one doctor testified on Roberts's behalf, and Gillespie testified for the defense. The facts surrounding the accident itself were not disputed. On January 27, 2008, Gillespie stopped behind the Robertses' car at a red light on New Germany-Trebein Road. When Gillespie believed that the light had changed, he took his foot off the brake and his car began to roll, striking the Robertses' car, which was approximately one car length in front of his car. According to Gillespie, he never pressed the accelerator before hitting the Robertses' car, and he was moving at a speed of less than ten miles per hour at the time of impact. The Robertses did not contradict this testimony.

{¶ 5} Roberts testified that her neck hurt "pretty much all the time" after the

---

[1] Erie Insurance was named in the complaint as Gillespie's insurer, but the claim against Erie was later dismissed without prejudice.

accident. After experiencing a little stiffness and discomfort at the scene of the accident, she went to an urgent care center that evening. She followed up with Dr. Ringle, her family doctor, the next day (January 28), and again on February 23. She stated that her activities during this time were "minimal to none." She testified that she had exercised daily prior to the accident, but that her exercise routine changed "drastically" as a result of the accident; she had gradually returned to a "modified" exercise routine, such as using a recumbent bike instead of her outdoor bike and walking instead of "power walking." She engaged in physical therapy, had "pain injections" in her neck muscles for several months, and had trouble sleeping. She also testified that, since the accident, she takes 800 mg of ibuprofen for pain every day and had aggravated her neck with activities such as pulling luggage through an airport and moving furniture. James Roberts's testimony corroborated some of his wife's testimony about how her activities had been restricted and how she had been treated for her pain after the accident.

{¶ 6} On cross-examination, Roberts was questioned about various medical records from the months after the accident which indicated that she had not reported neck pain during a doctor visit, reported minimal neck pain, or seemed to have affirmatively reported that she had been exercising. For example, Roberts had a cosmetic procedure three days after the accident, and the medical records from the doctor who performed that procedure contained no indication that she had suffered a recent injury or was in pain. She was also questioned about three visits to her podiatrist within one month of the accident, at which Roberts did not report that she was suffering from neck pain, and at which she seemed to have indicated that she had been able to ride her stationary bike for 50 minutes. Dr.

Ringle's records from the day after the accident stated that Roberts reported "minor neck pain only." Roberts was also questioned about physical therapy records from May and June of 2008 which suggested that she had returned to exercising by that time. And she was questioned about an intake form at a chiropractor's office after the accident on which she indicated that her "present injuries" were not due to a car accident.

{¶ 7} Roberts was also cross-examined about prior car accidents and preexisting neck pain. Roberts claimed not to recall her medical histories or treating physicians related to multiple car accidents in the 1990s. However, Mr. Roberts testified on cross-examination that his wife had experienced some neck pain in the 1990s, including at least one instance in which she "slept wrong" and went to the emergency room and another period of neck pain, perhaps "a couple of months," following a car accident.

{¶ 8} Dr. Townsend Smith, Director of the Miami Valley Hospital Acute and Chronic Pain Management Center, who treated Roberts for neck and left shoulder pain from April 2008 through May 2009, also testified for Roberts at trial. He administered "trigger point injections" to the muscles of Roberts's neck and upper back, which produced significant improvement in her symptoms.

{¶ 9} According to the medical history provided to Dr. Smith by Roberts, she had no neck pain prior to the 2008 car accident, so he attributed her neck pain to the accident. Dr. Smith stated that an MRI performed after the January 2008 accident showed "significant structural changes in [Roberts's] neck," but Dr. Smith did not state when he believed these changes had occurred. Dr. Smith noted some "congenital" problems at every level of Roberts's spine. Specifically, he stated that she had symptoms of osteoarthritis, including a

bone spur at cervical spine C3-4, narrowing of openings in the vertebrae through which nerves pass, and some herniation and degeneration of disks, all of which predated the accident and continued after the accident. When confronted with the possibility that Roberts had been involved in prior car accidents and had suffered past periods of neck pain (contrary to the history provided by Roberts), Dr. Smith nonetheless expressed the opinion that the pain for which he had treated Roberts was triggered by the car accident, because the pain had begun after the accident.

{¶ 10} Gillespie testified to the circumstances surrounding the accident, including that he had been rolling, but not accelerating, at the time of impact, after having been at a complete stop, and that his car had been moving less than ten miles per hour.

{¶ 11} After hearing the evidence, the jury was instructed that the parties did not dispute that Gillespie had been negligent and that Roberts had not been at fault in the accident. The jury was presented with the following interrogatories for its consideration and gave the following answers to those interrogatories:

1. "Did the Defendant, Zachary Gillespie, directly or proximately cause any injuries to the Plaintiff, Michelle Roberts as a result of the automobile collision of January 27, 2008?" The jury answered: "Yes"

2. "What amount of compensation, if any, will fairly and reasonably compensate Plaintiff, Michelle Roberts as to damages?

   "1) Medical expenses (Economic Loss)" The jury answered $0.

   "2) Pain and Suffering (Non-Economic Loss)" The jury answered $0.

   "3) Future Pain and Suffering (Non-Economic Loss)" The jury answered $0.

"4) Inability to Perform Usual Activities (Non-Economic Loss)" The jury answered $0.

On the verdict form, the jury stated that it found in favor of the Plaintiff and awarded damages in the amount of $0. Roberts did not raise any inconsistency between the jury verdict and/or the interrogatories before the jury was discharged, and the trial court entered judgment in favor of Gillespie.

{¶ 12} Roberts raises three assignments of error on appeal. The first assignment of error states:

**The Jury Verdict of Zero Damages was Against the Manifest Weight of the Evidence.**

{¶ 13} Roberts contends that the jury verdict was against the manifest weight of the evidence because, at the very least, Roberts's medical care the night of the accident and soon thereafter should have been compensable. She also contends that the jury may have improperly considered evidence of Roberts's plastic surgeries and payments from collateral sources in reaching its damage award.

{¶ 14} In the civil context, a judgment will not be reversed by a reviewing court as being against the manifest weight of the evidence if there is some competent, credible evidence going to all the essential elements of the case. *C.E. Morris Co. v. Foley Constr. Co.,* 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus; *State v. Wilson,* 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 24. This standard rests on the strong presumption that the trial court, as the trier of fact, is in the best position to weigh the evidence presented, assess the credibility of the witnesses, and make an informed factual

determination therefrom. *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984).

{¶ 15} As discussed above, the evidence at trial included Roberts's assertion that she had suffered neck pain beginning immediately after the accident and for several months thereafter, her husband's corroboration of these claims, and a doctor's opinion, based on the timing of the alleged onset of the neck pain, that it was caused by the accident. Through cross-examination, Gillespie attempted to refute Roberts's assertion that there was a direct correlation between the accident and her neck pain with evidence that she had previously suffered from neck pain, that she had congenital and degenerative conditions that could have caused the neck pain, and that her testimony may have exaggerated the extent of her pain and her physical limitations as compared with past reports of her pain and activity levels.

{¶ 16} Gillespie presented evidence that the accident occurred at very low speed, that there was minimal damage to the cars, and that all of Roberts's pain may not have been attributable to the 2008 accident. This evidence included Roberts's own expert witness's recognition that Roberts suffered from osteoarthritis and other preexisting conditions capable of causing neck and shoulder pain. But, despite Gillespie's attempts to challenge the assumptions underlying Dr. Smith's opinion – namely, the lack of prior history of neck pain or injury – Dr. Smith nonetheless expressed his medical opinion that Roberts had been injured in the accident. Roberts and her husband also testified that she had suffered discomfort which she attributed to the car accident immediately after it occurred.

{¶ 17} In our view, based on the evidence presented in this case, the jury's decision on the issue of proximate causation could have gone either way. Both parties presented

competent, credible evidence which might have supported a favorable judgment. The jury's affirmative answer to the interrogatory asking whether Gillespie "directly or proximately caused any injuries" to Roberts reflects its conclusion, which favored Roberts. This conclusion was not against the manifest weight of the evidence.

{¶ 18}     Roberts argues that, in light of the jury's finding in her favor on the issue of proximate causation, the jury's award of zero damages was against the manifest weight of the evidence. She analogizes her case to *Minney v. Guthrie*, 2d Dist. Greene No. 88-CA-37, 1989 WL 2182 (Jan. 12, 1989)  and *Walker v. Holland*, 117 Ohio App.3d 775, 691 N.E.2d 719 (2d Dist. 1997) in support of her argument that she "should be compensated for (at least) her treatment at the Urgent Care and follow up care."

{¶ 19}     *Minney* involved a rear-end collision resulting in neck pain and a plaintiff with a history of neck injuries. At trial, despite having been informed of "other possible causative factors," the medical expert for the defense agreed with the plaintiff's expert that the plaintiff had sustained a neck injury in the accident, and both experts agreed that the plaintiff's trip to the emergency room and her follow-up care were reasonable following such an injury. Notwithstanding this testimony, the jury concluded that the defendant had not proximately caused the injuries sustained by the plaintiff. The trial court granted the plaintiff's motion for a new trial, and the defendants appealed. We affirmed, stating that, "[a]t a minimum, the manifest weight of the evidence support[ed] an award of damages for Minney's emergency room care immediately following the collision." *Id*. at *4.

{¶ 20}     *Walker* involved a low-speed, head-on collision. The plaintiff, who was two months pregnant at the time, testified that the impact "pressed her forward against the

seat belt and 'slammed' her against the seat." She was transported to a hospital and complained of pelvic cramping and neck soreness; she suffered cramping and some bleeding for the next few weeks, and she miscarried about six weeks after the accident. The trial court directed a verdict on the issue of negligence, but submitted the issues of causation and damages related to both the neck injury and the miscarriage to a jury. The jury returned a verdict for the defendant, and the trial court entered judgment accordingly. On appeal, the plaintiff argued that the jury's verdict was against the manifest weight of the evidence and that she was entitled to damages "at least equal to Walker's emergency room bills." *Id*. at 791. In considering these arguments, we stated:

> After reviewing the record, we find competent, credible evidence supporting a finding that Holland did not cause Mrs. Walker's physical ailments or her miscarriage. * * * [T]he record contains testimony that Mrs. Walker had experienced, and received treatment for, neck and back problems since 1983. Mrs. Walker also testified that those problems "flared up" following a 1991 automobile accident and troubled her intermittently thereafter. In fact, the record reveals that Mrs. Walker received treatment from Richard Teeters, a Dayton chiropractor, just ten days before her * * * automobile accident with Holland.

We agreed, however, with the plaintiff's argument that, even if the defendant's negligence proximately caused no objective injuries, the plaintiff was entitled to compensation for the medical expenses she incurred immediately after the accident. "[I]t cannot be disputed that Holland's negligence caused Mrs. Walker to undergo an emergency room examination and an

ultrasound test. In light of Mrs. Walker's pregnancy and the substantial damage done to her vehicle in the head-on accident, we agree that she received appropriate medical treatment. Common sense would dictate, at a minimum, that a pregnant woman should undergo such testing." *Id.* at 793.

**{¶ 21}** *Minney* and *Walker* support Roberts's argument that, in light of the jury conclusion that she had suffered an injury as a proximate result of the accident, she was entitled to some amount of damages for the treatment she sought and care she received that was related to that injury.

**{¶ 22}** Gillespie argues that Roberts's case is more analogous to *McBride v. Quebe,* 2d Dist. Montgomery No. 21310, 2006-Ohio-5128*,* than to *Minney* or *Walker*. *McBride* also involved a traffic accident in which the plaintiff's negligence was not disputed; however, evidence was presented that the defendant had pre-existing injuries similar to those she claimed had been caused in the accident. The jury returned a verdict for the defense. On appeal, we noted that the plaintiff's trial testimony about her medical history had differed dramatically from the history reflected in her medical records, and that, notwithstanding the plaintiff's medical history, her experts testified that "all" of her medical problems were attributable to the accident. We concluded that the jury verdict for the defense had been supported by competent, credible evidence, that the judgment was not against the manifest weight of the evidence, and that the trial court had not abused its discretion in overruling the plaintiff's motion for a new trial. *Id*. at ¶ 45.

**{¶ 23}** Only the general verdict is discussed in *McBride*, but it appears that the jury's verdict was based on a finding that the plaintiff's injuries were not proximately caused

by the accident. The jury in *McBride* never reached the issue of damages. In Roberts's case, on the other hand, we are confronted with a jury interrogatory and a verdict form that expressly state a finding of proximate causation. We do not find *McBride* to be analogous.

**{¶ 24}** Gillespie argues that Roberts's argument essentially challenges the inconsistencies between the jury's interrogatories, and that such an argument is waived unless the party raises it before the jury is discharged. See *O'Connell v. Chesapeake & Ohio RR. Co.*, 58 Ohio St.3d 226, 229, 569 N.E.2d 889 (1991). This rule recognizes that a court can only exercise the full range of available remedies while the jury is still impaneled. *Shoemaker v. Crawford*, 78 Ohio App.3d 53, 61, 603 N.E.2d 1114 (10th Dist. 1991). Although we acknowledge and abide by this rule, the inconsistency in Roberts's case was also contained in the verdict form itself, which stated that the jury found in favor of the plaintiff but awarded no damages. While normally the failure to object prior to the discharge of a jury results in the waiver of any alleged error, this is not the case in the event the error in question amounts to plain error. *O'Connell* at 229; *Garaux v. Ott*, 5th Dist. Stark No. 2009 CA 00183, 2010-Ohio- 2044, ¶ 26. Verdict forms that appear to be internally inconsistent can reflect such plain error. *Garaux* (holding that, in light of jury's finding of negligence and proximate causation and its damage award for medical expenses and lost wages or income, its refusal to award any money for pain and suffering and/or inability to perform usual activities and for future damages was against the manifest weight of the evidence.)

**{¶ 25}** The jury found that the accident had directly or proximately caused Roberts some injury. Therefore, its failure to award some amount of damages was against the manifest weight of the evidence.

**{¶ 26}**     The first assignment of error is sustained.

**{¶ 27}**     The second and third assignments of error state:

**The Trial Court Erred in Allowing Inadmissible Hearsay and Unauthenticated Documents into Evidence.**

**The Trial Court Erred in Allowing Defendants's Exhibit P into Evidence without Expert Witness Testimony.**

**{¶ 28}**     In her second assignment of error, Roberts argues that the trial court erred in permitting the defense to introduce a summary of medical bills (Exhibit P); she claims it was based on inadmissible hearsay.  In her third assignment, she claims that Exhibit P should have been excluded because no expert testified that the "amount accepted by the medical providers was the reasonable value of the medical expenses incurred."

**{¶ 29}**     Given our disposition of the first assignment, any error in admitting exhibits related to the amount of damages is moot.  Thus, we will not address these arguments. App.R. 12(A)(1)(c).

**{¶ 30}**     The judgment of the trial court will be reversed, and the matter will be remanded to the trial court for further proceedings.

. . . . . . . . . .

FAIN, P.J., concurs.

DONOVAN, J., dissenting:

**{¶ 31}**     I disagree.  In my view, any error was waived by a lack of objection to the verdict.  The instant case does not present one of those rare situations in which the plain error doctrine must be invoked in order to prevent a manifest miscarriage of justice.  Also, I

believe that the majority's reliance on *O'Connell* is misplaced. The *O'Connell* case involved an issue of constitutional infirmity. *O'Connell* was a comparative negligence case, which distinguished the "same juror" rule vs. "any majority" rule. In *O'Connell*, a verdict of not less than three-fourths of the jury had not been rendered, thus constituting a violation of Ohio Constitution, Section 5, Article I and Civ.R. 48. No such infirmity is established herein.

{¶ 32} Furthermore, there was competent, credible evidence indicating that this was only a very minor accident with minimal damage to plaintiff's vehicle upon which the jury could have questioned the authenticity of plaintiff's claimed injuries and the necessity and reasonableness of any treatment. Given the lack of objective findings of the injuries claimed, the doubt cast on plaintiff's credibility and evidence that she was exaggerating her injuries, we should presume the jury findings are correct and not against the manifest weight of the evidence. I would affirm.

. . . . . . . . . .

Copies mailed to:

John A. Smalley
Steven O. Dean
Hon. Stephen A. Wolaver